[Cite as *State v. Lauharn*, 2012-Ohio-6185.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MIAMI   COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2012-CA-9 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2010-CR-47 |
| v. | : | |
| | : | |
| GARY D. LAUHARN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of December, 2012.

. . . . . . . . . .

ROBERT E. LONG, III, Atty. Reg. #0066796, Miami County Prosecutor's Office, 201 West Main Street, Safety Building, Troy, Ohio 45373
  Attorney for Plaintiff-Appellee

GARY D. LAUHARN, Inmate #A638-815, Toledo Correctional Institution, 2001 East Central Avenue, Post Office Box 80033, Toledo, Ohio 43608-0033
  Defendant-Appellant, *pro se*

. . . . . . . . . . . .

HALL, J.

{¶ 1} Gary D. Lauharn appeals pro se from the trial court's denial of a post-sentence motion to withdraw his no-contest plea and motion for reconsideration.

{¶ 2}    In his sole assignment of error, Lauharn contends the trial court erred in denying the plea-withdrawal motion and the motion for reconsideration of that ruling because his no-contest plea was not entered knowingly, intelligently, and voluntarily.

{¶ 3}    The record reflects that Lauharn entered a no-contest plea to multiple counts of rape, pandering obscenity involving a minor, and pandering sexually oriented material involving a minor. Pursuant to a plea agreement, the State dismissed a number of additional charges. The trial court imposed an aggregate sentence of forty years in prison. Lauharn appealed.

{¶ 4}    While his direct appeal was pending, Lauharn moved to withdraw his no-contest plea. The trial court overruled that motion and a motion for reconsideration while the direct appeal remained pending. Lauharn filed a second appeal from the trial court's denial of those motions.

{¶ 5}    This court disposed of the initial appeal by reversing and remanding to allow the trial court to correct a defect in its sentencing entry. *See State v. Lauharn*, 2d Dist. Miami No. 2010-CA-35, 2011-Ohio-4292 ("*Lauharn I*"). This court later dismissed Lauharn's appeal from the trial court's denial of his motion to withdraw his no-contest plea and his motion for reconsideration. This court reasoned that the trial court lacked jurisdiction to rule on the motions while a direct appeal was pending. *See State v. Lauharn*, 2d Dist. Miami No. 2011-CA-10, 2012-Ohio-1572 (*"Lauharn II"*).

{¶ 6}    On May 17, 2012, with jurisdiction returned to it, the trial court again considered and overruled Lauharn's motion to withdraw his no-contest plea and motion for reconsideration. In relevant part, the trial court reasoned:

The motion to withdraw plea filed April 1, 2011, asserts that the

defendant was unaware that he could receive consecutive sentences. However, the transcript of the plea hearing of September 8, 2010, demonstrates that, on multiple occasions, Lauharn was told that the sentences for the offenses could be run concurrently or consecutively. On each occasion, Lauharn stated under oath that he understood. The motion to withdraw plea filed April 1, 2011 is overruled.

The defendant also has filed a motion for reconsideration on April 14, 2011, asking the court to reconsider the court's denial of the motion to withdraw his plea. In the motion for reconsideration, Lauharn reasserts that he was not informed about the possibility of consecutive sentences. In addition, Lauharn asserts the additional ground that, at the time of the plea, he was " . . . under the influence of several medical and psychotropic medications during the time of his plea hearing." The transcript of the plea hearing reveals the court asked Lauharn if he was under the influence of any medication and Lauharn responded that he was taking seizure medication. The court explained to the defendant that if any medication affected his ability to understand what he was doing, the court would not go ahead with the plea. The defendant also assured the court that he would let the court know if he did not understand something during the plea hearing. In addition, the colloquy between Lauharn and Judge Lindeman demonstrates that the defendant appropriately responded to questions throughout the proceeding. This assertion that he was under the influence of multiple, albeit unnamed, medications is in contrast to the

defendant's testimony at the plea hearing. The motion for reconsideration fails to establish that any medications interfered with his ability to understand the proceedings during the plea hearing. The motion for reconsideration is overruled.

(Doc. #58 at 1-2).

{¶ 7}    On appeal, Lauharn contends he should have been permitted to withdraw his no-contest plea for several reasons: (1) his attorney "convinced him he would receive a sentence from the range of 5 to 8 years"; (2) he was advised, incorrectly, that the maximum aggregate punishment he faced was ninety-two years in prison rather than 129 years; (3) the plea form and the trial court both incorrectly stated that the penalty for count ten was three to fifteen years in prison rather than two to fifteen years; (4) he did not understand that he could be required to serve consecutive sentences; and (5) he was in a "drug induced stupor at the time of the plea."

{¶ 8}    Pursuant to Crim.R. 32.1, a defendant must demonstrate a "manifest injustice" to withdraw a plea after sentencing. "A manifest injustice has been defined as 'a clear or openly unjust act' that involves 'extraordinary circumstances.'" *State v. Minkner*, 2d Dist. Champaign No. 2009 CA 16, 2009-Ohio-5625, ¶ 25, quoting *State v. Stewart*, 2d Dist. Greene No. 2003-CA-28, 2004-Ohio-3574. We review a trial court's ruling on a post-sentence motion to withdraw a plea for an abuse of discretion. *Xenia v. Jones*, 2d Dist. Greene No. 07-CA-104, 2008-Ohio-4733, ¶ 6. We see no abuse of discretion here.

{¶ 9}    During the plea hearing, Lauharn admitted that no one had promised or guaranteed him anything with regard to his sentence. He also acknowledged that the trial court

would not be bound by any promises or representations made by anyone. (Plea hearing transcript at 6). Lauharn did not mention any expectation of a five-to-eight year prison sentence, and nothing the trial court said should have caused him to expect such a sentence.

{¶ 10} The hearing transcript does reflect that the trial court told Lauharn he faced a maximum sentence of ninety-two years in prison. Actually he faced a potential 129-year sentence because three of the ten charges to which he pled were committed before July 1, 1996, resulting in indeterminate sentences. Nevertheless we previously determined that we see no prejudice to Lauharn and no manifest injustice. This court previously addressed the issue in *Lauharn I*, albeit arguably in dicta.[1] This court noted that advising a defendant of the maximum sentence he faces is not constitutionally required. This court also found no evidence that, but for the trial court's misstatement, Lauharn would have refused to plead. *Lauharn* I at ¶ 8-10 and fn. 2. The same reasoning applies here. We find no manifest injustice in the trial court telling Lauharn, who was fifty-seven years old, that he faced up to ninety-two years in prison rather than 129 years, particularly where he received an aggregate sentence substantially shorter than either of those terms.

{¶ 11} We reach the same conclusion with regard to Lauharn's claim that the penalty for count ten, a second-degree felony, was misstated as being three to fifteen years in prison rather than two to fifteen years. This misstatement did not render his plea to count ten less than knowing, intelligent, and voluntary. We note that a trial court is not even required to

---

[1] In part because this court's discussion of the issue in *Lauharn I* arguably was dicta, we decline the State's invitation to apply res judicata. In addressing the validity of the plea in *Lauharn I*, this court began: "Lauharn correctly points out that at the plea hearing the trial court informed him of the wrong maximum penalty for Count 6. While he raises the issue, Lauharn does not assign error to or argue or even assert that his no-contest plea to this count was thereby rendered involuntary. While we may therefore disregard the issue, see App.R. 12(A)(2) and 16(A), we will nevertheless address it briefly." *Lauharn I* at ¶ 7.

address the minimum sentence a defendant faces. *State v. Dixon*, 2d Dist. Montgomery No. 23671, 2010-Ohio-4919, ¶ 24; *State v. Beatty*, 8th Dist. Cuyahoga No. 75926, 2000 WL 1844754 (Dec. 14, 2000) (noting that a "defendant's knowledge of the maximum and minimum sentences is not constitutionally required"). Moreover, we see no likelihood that the misstatement impacted Lauharn's decision to plead no contest, particularly where the trial court overstated the minimum sentence by a year. Indeed, he cannot seriously argue that he would have refused to plead if he had known the minimum sentence was a year *less* than he believed.

{¶ 12}   The sentencing transcript belies Lauharn's claim that he did not understand he could receive consecutive sentences. Lauharn argues that the trial court used misleading terminology about consecutive sentences which suggested to him that he would not receive consecutive sentences. We note that there were ten counts explained by the court.  The six counts of rape were first addressed. The court stated:  "And because there is more than one charge here, all those rape charges, well they could all run at the same time or they could run consecutively." (Sentencing Tr. at 11-12). Lauharn acknowledged his understanding. Then, after discussing the four pandering charges, the court stated: "Because once again, we have more than one charge, those pandering obscenity charges could run concurrently, or at the same time, or whatever sentence you got on each one of those could run consecutive to one another." (*Id.* at 13). The defendant again acknowledged  his understanding. Finally, the court addressed the interrelation of the two sets of charges as follows: "And since we have all- the rapes over here, and the panderings over here, *technically* the - all the rape charges and the

pandering charges could all run consecutive." (Emphasis added.). (*Id.* at 14). Again, the defendant acknowledged his understanding. Later in the colloquy, when the court and defendant's counsel were calculating the maximum potential penalty, after stating that all the penalties could be consecutive, the court said: "So, I'm going to say uh, and as I explained to you *in theory* everything could run consecutive, like you know, all after - one after the other, thirty-two [4 x 8 years for the pandering charges] and sixty [calculating 6 x 10 years for the rape charges] - that's ninety-two years, actually. *In theory.*" (Emphasis added.). (*Id.* at 17). It is the defendant's contention that his attorney led him to believe he would receive a 5-8 year sentence and the court's quoted dialog failed to dissuade him of this belief. His argument fails for at least three reasons. First, there is nothing of record of any representation of any sentencing expectation. To the contrary, the defendant indicated no one promised or guaranteed him anything in exchange for his pleas to the 10 charges. (*Id.* at 6). The court specifically stated it was not bound by any promises or representations and the defendant said he understood. Second, the tenor of the entire plea colloquy does not suggest that the defendant will only receive concurrent sentences. Perhaps the court was anticipating that it would not make the pandering charges consecutive to the rape charges, which is in fact what it did, but taken as a whole, the court did not mislead the defendant by its terminology. Thirdly, the charges stem from the defendant repeatedly, often daily, having sex with his daughter from the time she was about 14 until she was 17. He took photos and audio tapes of several of the encounters. He facilitated some of the offenses by giving her alcohol and perhaps drugs. The defendant admitted to the police he had an extended sexual relationship with his minor daughter. He also was charged, and convicted, of rape of one of his daughter's girlfriends. It is

simply beyond belief that any attorney would indicate that the defendant would get a sentence of only 5-8 years and it is beyond belief that the defendant, knowing the egregious circumstances of the charges, could ever harbor a realistic expectation of a 5-8 year sentence. The trial court advised Lauharn about the potential for consecutive sentences, and he indicated his understanding. (*Id* at 12-14, 17). His argument that the trial court misled him is not supported by the record.

{¶ 13} Likewise the hearing transcript belies Lauharn's claim that he was in a drug-induced stupor when he entered his no-contest plea. The trial court inquired about Lauharn's medication. He assured the trial court that his medication did not prevent him from understanding what was happening. (*Id*. at 7). He also responded appropriately to the trial court's inquiries throughout the hearing and gave no indication that he was acting under the influence of anything.

{¶ 14} In short, the hearing transcript demonstrates that Lauharn's plea was entered knowingly, intelligently, and voluntarily. The trial court did not abuse its discretion in finding no manifest injustice requiring withdrawal of the plea.

{¶ 15} The assignment of error is overruled, and the judgment of the Miami County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.

Copies mailed to:
Robert E. Long, III
Gary D. Lauharn

Hon. Christopher Gee